Submitted on the briefs January 4, peremptory writ of mandamus to issue
February 25, 2021

# STATE OF OREGON,
*Plaintiff-Adverse Party,*

*v.*

# MICHAEL STUART ROSS,
*Defendant-Relator.*

## (CC 18CR32198; 19CR45558) (SC S067936)

481 P3d 1286

In relator's criminal case, the trial court held that, in light of *Ramos v. Louisiana*, 590 US ___, 140 S Ct 1390, 206 L Ed 2d 583 (2020), the jury should be instructed that unanimity is necessary for either a guilty or a not-guilty verdict. Relator filed a mandamus petition in the Supreme Court, arguing that *Ramos* did not affect the constitutionality of Oregon laws permitting nonunanimous acquittals. *Held*: (1) Mandamus is an appropriate remedy for an instruction that misstates the requirements for acquittal and (2) *Ramos* did not invalidate the provisions of Oregon law permitting nonunanimous acquittals.

Peremptory writ of mandamus to issue.

En Banc

Original proceeding in mandamus.*

Laura Graser, Portland, filed the briefs for relator.

No appearance *contra*.

NAKAMOTO, J.

Peremptory writ of mandamus to issue.

_____
    * On petition for alternative writ of mandamus from an order of Washington County Circuit Court, Andrew R. Erwin, Judge.

## NAKAMOTO, J.

This mandamus proceeding arises out of a criminal case in which both relator and the state asked the trial court to instruct the jury that it could acquit defendant by a vote of 10-to-2. The trial court concluded that, in the wake of *Ramos v. Louisiana*, 590 US ___, 140 S Ct 1390, 206 L Ed 2d 583 (2020), any verdict on serious criminal charges— whether to convict or to acquit—must be unanimous, and the court informed the parties that it would instruct the jury accordingly. Relator contends that, although the Supreme Court's holding in *Ramos* would render a nonunanimous *guilty* verdict in his trial unconstitutional under the Sixth Amendment, that holding did not affect the viability of Oregon law—specifically, Article I, section 11, of the Oregon Constitution and ORS 136.450—authorizing a nonunanimous *not-guilty* verdict. We agree with relator and issue a peremptory writ of mandamus ordering the trial court to instruct the jury that Oregon law requires a unanimous guilty verdict for all charges and permits a not-guilty verdict by a vote of 11 to one or 10 to two.

## BACKGROUND

The limited facts are procedural. In 2018 and 2019, relator was charged with murder and several other crimes in two consolidated cases.

On April 20, 2020, before defendant's trial, the United States Supreme Court issued its decision in *Ramos*. In a discussion in chambers in July 2020, the trial court indicated that, in light of *Ramos*, it intended to instruct the jury that it needed to be unanimous to convict or acquit relator of any of the charged crimes. In a pretrial hearing two days later, the parties further discussed that issue with the trial court. The trial court began by restating its position that a jury instruction requiring unanimity for both convictions and acquittals was required by *Ramos*. The trial court explained that it read *Ramos* as having "relegated to the dustbin of history," *Ramos*, 590 US at ___, 140 S Ct at 1410 (Sotomayor, J., concurring), the provisions of Oregon law permitting nonunanimous verdicts, insofar as those provisions had their origins in racial animus. The trial judge

stated that he had been conferring with many judges about the issue, some of whom agreed with his position.

Relator disagreed with the trial court's interpretation of *Ramos*. Relator argued that the discussion in *Ramos* of the racist history of laws permitting convictions by nonunanimous juries had not been the basis for the Supreme Court's holding that unanimity was required for guilty verdicts; rather, that history had been relevant only to the Supreme Court's decision to overrule prior precedent upholding nonunanimous convictions. Relator further argued that, under Oregon law, the jury was permitted to return a nonunanimous acquittal and that *Ramos* did not call into question the constitutionality of that provision. Relator therefore asked the trial court to instruct the jury that it needed to be unanimous to convict but that it could acquit by a vote of 10 to two.

The state agreed with relator. Although the prosecutor indicated that he was personally sympathetic to the trial court's interpretation of *Ramos*, he informed the court that the state was requesting the same jury instruction sought by relator, to avoid generating an appealable issue.

After argument by the parties, the trial court decided that, consistently with its original inclination, it would instruct the jury that it needed to be unanimous either to convict or to acquit defendant. The trial court encouraged defendant to petition this court for a writ of mandamus to obtain a definitive answer to the question, and it postponed the trial, in part to facilitate that process.

The trial court then entered an order containing its reasoning as well as its ruling on the jury instruction issue. The trial court explained:

"Despite the US Supreme Court's emphatic denouncement of Oregon's non-unanimity rule as systemically racist, this Court is yet asked to continue to partially apply the rule for verdicts of acquittal. I am asked to focus only on Part 1 of the *Ramos* decision—holding that the Sixth Amendment only requires unanimity for a guilty verdict. This argument seems to suggest that the Court should uphold a systemically racist law so long as it is only used to discriminate against jurors of color when they vote to convict. But

it cannot be used to discriminate against jurors of color whose votes are acquittal."

The court also discussed the concurring opinions of Justices Kavanaugh and Sotomayor in *Ramos*, which it understood to support its view that nonunanimous acquittals can no longer be permitted in Oregon. The trial court reasoned that "[a]llowing a systemically racist law to silence jurors of color who vote to find a defendant guilty is just as odious to victim's rights as is allowing it to silence jurors of color who vote to acquit." The court also stated that, "[f]ollowing the *Ramos* decision, this acquittal jury instruction issue has arisen numerous times in this County and the bench and bar would greatly benefit from the Oregon Supreme Court's guidance on this issue before the trial is held."

Relator filed a petition for writ of mandamus in this court. Relator reprised his arguments to the trial court and emphasized that, in *Ramos*, the Supreme Court's discussion of the history of the nonunanimous jury provisions in Oregon and Louisiana had been relevant only to the discussion of *stare decisis*, rather than an independent basis for holding those laws unconstitutional.

This court issued an alternative writ of mandamus, requiring the trial court either to vacate its order or to show cause why it had not. The trial court chose not to vacate its order. After relator filed his opening brief, the state waived its appearance, and the case was submitted without argument.

## ANALYSIS

An initial question in this case is whether issuance of a writ of mandamus is appropriate. As noted, the trial court invited relator to pursue a writ of mandamus in this court because it thought that a quick resolution of the issue by this court would benefit the bench and the bar. Relator likewise contends that mandamus is appropriate, and the state, in waiving its appearance, has not disagreed. We agree with the trial court that, in light of the significant number of pending criminal cases that could be affected by this issue and the apparent uncertainty among some trial court judges about how to proceed, it is better for us to answer this question sooner rather than later.

Still, a writ of mandamus "shall not be issued in any case where there is a plain, speedy and adequate remedy in the ordinary course of the law." ORS 34.110. We agree that that requirement is met, although, because of the absence of disagreement about the appropriateness of mandamus, we address that subject only briefly.

A jury instruction that misstates the requirements for acquittal presents a potential for harm that may not be remediable on appeal. If a jury instructed in that manner convicts the defendant, the defendant can appeal, but the error ultimately may be found harmless, which would preclude relief. The greater potential of harm to defendants would come in cases when the jury is instructed on a requirement of unanimity for acquittal but only 10 or 11 jurors vote in favor of acquittal. If defendant is correct, that would be a verdict of acquittal under Oregon law. But under the trial court's proposed instruction, the nonunanimous vote would result in a mistrial, thereby allowing a retrial. A defendant could not appeal from that nonverdict and would potentially face two additional difficulties in obtaining relief though a writ of mandamus at that point. The first would be showing how jurors had voted, because parties are entitled to a poll of the jury when a verdict is received, *see* ORCP 59 G(3) ("[w]hen the verdict is given, * * * the jury may be polled"), but the basis for a defendant to ascertain votes by the jurors is less clear when a mistrial is declared.[1] The second is that it is not clear what relief would be available on appeal, given the uncertain propriety of barring another prosecution based on a potential verdict of acquittal that was never returned. It may be that those hurdles are surmountable, but, at this juncture, we cannot conclude that relator has any plain alternative remedy. *See State ex rel*

---

[1] Although ORCP 59 G(3) is a rule of civil procedure, it and certain other civil procedure rules "apply to and regulate the conduct of the trial of criminal actions." ORS 136.330(1). Among those are ORCP 59 F(1)(a), which does not mandate polling of jurors who are unable to reach a verdict. Rather, that rule provides that a jury may be discharged without reaching a verdict if "it satisfactorily appears that there is no probability of an agreement." And rules protective of jurors' privacy may interfere with more informal attempts to learn the votes of jurors. *See* UTCR 3.120(1) (providing that, "[e]xcept as necessary during trial, and except as provided in subsection (2), parties, witnesses or court employees must not initiate contact with any juror concerning any case which that juror was sworn to try").

*Dewberry v. Kulongoski*, 346 Or 260, 271, 210 P3d 884 (2009) ("[A] 'plain' remedy is one that is obvious, clear, and without uncertainty."). We therefore conclude that, in the unusual circumstances of this case, and considering the unique risks created by an instruction misstating the legal requirements for an acquittal, mandamus is a proper remedy. Accordingly, we decide the merits of defendant's argument that, notwithstanding the *Ramos* decision, Oregon law requires the trial court to instruct the jury that it may return a verdict of acquittal based on a 10-2 or 11-1 vote.

Two provisions of Oregon law, Article I, section 11, and ORS 136.450, authorize nonunanimous verdicts. Article I, section 11, provides that, in criminal cases, "ten members of the jury may render a verdict of guilty or not guilty, save and except a verdict of guilty of first degree murder, which shall be found only by a unanimous verdict, and not otherwise[.]" In addition to that constitutional authority, ORS 136.450 provides for nonunanimous jury verdicts, when the jury consists of 12 jurors: "The verdict of a trial jury in a criminal action shall be by concurrence of at least 10 of 12 jurors." Those provisions authorize the receipt of nonunanimous not-guilty verdicts as well as—except in certain murder cases—guilty verdicts.

Those provisions govern this case, except insofar as they must give way to a conflicting requirement of federal law. The trial court declined to apply the provisions of Oregon law permitting nonunanimous acquittals because it concluded that, giving consideration to the Supreme Court's decision in *Ramos*, those provisions were unconstitutional under the Sixth Amendment to the United States Constitution. The Sixth Amendment provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed[.]" The Court in *Ramos* held that the Sixth Amendment's jury trial right requires a unanimous verdict to convict an accused defendant; thus, it "leaves no doubt that our state's acceptance of nonunanimous guilty verdicts must change." *State v. Ulery*, 366 Or 500, 501, 464 P3d 1123 (2020). The trial court recognized that *Ramos* prohibits nonunanimous guilty verdicts and then, based on *Ramos*, went a

step further, leading to the issue presented: whether the Supreme Court's decision also precludes Oregon courts from continuing to accept nonunanimous verdicts of acquittal.

To resolve that issue, we review in detail what the Supreme Court held in *Ramos* and why it reached the conclusions that it did. To provide context for that examination, we first discuss a prior Supreme Court decision, *Apodaca v. Oregon*, 406 US 404, 92 S Ct 162, 832 L Ed 2d 184 (1972), *abrogated by Ramos v. Louisiana*, 590 US ___, 140 S Ct 1390, 206 L Ed 2d 583 (2020). In *Apodaca*, three Oregon defendants who had been convicted based on nonunanimous guilty verdicts argued that "conviction of crime by a less-than-unanimous jury violates the right to trial by jury in criminal cases specified by the Sixth Amendment and made applicable to the States by the Fourteenth." *Id.* at 406. A majority of the Supreme Court affirmed the convictions, but the justices in the majority did not agree on the rationale for the holding. In *Ramos*, the Supreme Court described the breakdown of the votes on Oregon's practice of permitting nonunanimous convictions, a practice shared by Louisiana:[2]

"Four dissenting Justices would not have hesitated to strike down the States' laws, recognizing that the Sixth Amendment requires unanimity and that this guarantee is fully applicable against the States under the Fourteenth Amendment. But a four-Justice plurality took a very different view of the Sixth Amendment. These Justices declared that the real question before them was whether unanimity serves an important 'function' in 'contemporary society.' Then, having reframed the question, the plurality wasted few words before concluding that unanimity's costs outweigh its benefits in the modern era, so the Sixth Amendment should not stand in the way of Louisiana or Oregon.

"The ninth Member of the Court adopted a position that was neither here nor there. On the one hand, Justice Powell agreed that, as a matter of 'history and precedent, . . . the Sixth Amendment requires a unanimous jury verdict to convict.' But, on the other hand, he argued that the Fourteenth Amendment does not render this guarantee

---

[2] The same day that it issued *Apodaca*, the Court addressed a separate challenge to Louisiana law in a companion case, *Johnson v. Louisiana*, 406 US 356, 92 S Ct 1620, 32 L Ed 2d 152 (1972), *abrogated by Ramos*, 590 US ___, 140 S Ct 1390.

against the federal government fully applicable against the States."

*Ramos*, 590 US at \_\_\_, 140 S Ct at 1397-98 (footnotes omitted; deletion in original).

After *Apodaca*, for close to half a century, the Supreme Court did not return to the question whether the federal constitution required unanimity for jurors to convict in state courts—until *Ramos*. In *Ramos*, the Court addressed and resolved three issues.

The first issue was whether the Sixth Amendment right to a jury trial included a requirement that the jury be unanimous to convict. The Supreme Court held that it did:

> "Wherever we might look to determine what the term 'trial by an impartial jury trial' meant at the time of the Sixth Amendment's adoption—whether it's the common law, state practices in the founding era, or opinions and treatises written soon afterward—the answer is unmistakable. *A jury must reach a unanimous verdict in order to convict.*"

*Ramos*, 590 US at \_\_\_, 140 S Ct at 1395 (emphasis added). In reaching that conclusion, the Court rejected an argument, advanced by Louisiana, similar to that embraced by the *Apodaca* plurality: that unanimity was not a sufficiently important feature of the common-law jury trial right to be included within the Sixth Amendment's guarantee. Eschewing that approach, the Court criticized *Apodaca*'s "breezy cost-benefit analysis," *Id.* at \_\_\_, 140 S Ct at 1401, and ultimately emphasized that its

> "real objection here isn't that the *Apodaca* plurality's cost-benefit analysis was too skimpy. The deeper problem is that the plurality subjected the ancient guarantee of a unanimous jury verdict to its own functionalist assessment in the first place."

*Id.* at \_\_\_, 140 S Ct at 1401-02.

The Supreme Court then turned to whether that right applied to jury trials in state courts. The Court explained that, under its incorporation precedents, "[t]here can be no question either that the Sixth Amendment's unanimity requirement applies to state and federal criminal trials equally." *Id.* at \_\_\_, 140 S Ct at 1397.

Third, the Supreme Court examined whether *Apodaca* should be overruled. A majority of the Court concluded that, even if *Apodaca* were a binding precedent, it would be appropriate to overrule it. The Court explained that *Apodaca*'s plurality opinion was poorly reasoned and that both the plurality opinion and Justice Powell's separate concurrence were in tension with Supreme Court decisions before and since. *Id.* at ___, 140 S Ct at 1405-06. A plurality of the Court further concluded that the reliance interests of Oregon and Louisiana in criminal judgments that would be affected by overruling *Apodaca* were insufficient to support the application of *stare decisis. Id.* at ___, 140 S Ct at 1407-08 (opinion of Gorsuch, J.). Justice Kavanaugh, who joined the majority opinion but not the plurality's discussion of reliance interests, authored a separate concurrence on the *stare decisis* analysis, as did Justice Sotomayor. *See id.* at ___, 140 S Ct at 1408 (Sotomayor, J., concurring in part); *id.* at ___, 140 S Ct at 1410 (Kavanaugh, J., concurring in part).

At three points in the majority opinion, the Court discussed the history of the nonunanimous jury laws in Louisiana and Oregon. The Court first raised that subject in the introduction to the opinion, which served only to provide historical context:

> "Adopted in the 1930s, Oregon's rule permitting nonunanimous verdicts can be similarly traced to the rise of the Ku Klux Klan and efforts to dilute the influence of racial, ethnic, and religious minorities on Oregon juries. In fact, no one before us contests any of this; courts in both Louisiana and Oregon have frankly acknowledged that race was a motivating factor in the adoption of their States' respective nonunanimity rules."

*Id.* at ___, 140 S Ct at 1394 (footnotes and internal quotation marks omitted).

Later in the opinion, the Court returned to the discriminatory motivation for having nonunanimous juries in Oregon and Louisiana, as part of its substantive analysis. To explain its rejection of Louisiana's argument that the *Apodaca* plurality's understanding of the Sixth Amendment should prevail, the Court provided the following critique of *Apodaca*:

> "Who can profess confidence in a breezy cost-benefit analysis like [the *Apodaca* plurality's]? *Lost in the accounting are the racially discriminatory reasons that Louisiana and Oregon adopted their peculiar rules in the first place.* What's more, the plurality never explained why the promised benefit of abandoning unanimity—reducing the rate of hung juries—always scores as a credit, not a cost. But who can say whether any particular hung jury is a waste, rather than an example of a jury doing exactly what the plurality said it should—deliberating carefully and safeguarding against overzealous prosecutions? And what about the fact, too, that some studies suggest that the elimination of unanimity has only a small effect on the rate of hung juries? Or the fact that others profess to have found that requiring unanimity may provide other possible benefits, including more open-minded and more thorough deliberations?"

*Ramos*, 590 US at ___, 140 S Ct at 1401 (emphasis added; footnotes omitted). As the Court elaborated in a footnote, "if the Sixth Amendment calls on judges to assess the functional benefits of jury rules, as the *Apodaca* plurality suggested, how can that analysis proceed to ignore the very functions those rules were adopted to serve?" *Id.* at ___ n 44, 140 S Ct at 1401 n 44. But the Court's point was not that the *Apodaca* plurality should have conducted a more comprehensive functionalist analysis, such as one that took racial discrimination into account. Rather, the Court observed, the motive behind the adoption of the nonunanimous verdict law was irrelevant to the proper analysis: "a jurisdiction adopting a nonunanimous jury rule even for benign reasons would still violate the Sixth Amendment." *Id.*

The Court mentioned the history of Oregon's nonunanimous jury provision one more time, in its *stare decisis* analysis. There, in explaining that *Apodaca*'s plurality had been "gravely mistaken," the Court referred back to its prior discussion of the plurality's errors:

> "Without repeating what we've already explained in detail, it's just an implacable fact that the plurality spent almost no time grappling with the historical meaning of the Sixth Amendment's jury trial right, this Court's long-repeated

statements that it demands unanimity, or the racist ori-
gins of Louisiana's and Oregon's laws."

*Ramos*, 590 US at ___, 140 S Ct at 1405.

      With that review of the Court's opinion in mind, we
turn to the trial court's interpretation of *Ramos*. The trial
court understood *Ramos* to require it to reject any appli-
cation of Oregon's nonunanimous jury provisions, either for
guilty or not-guilty verdicts. The court reasoned:

> "I am asked to focus only on Part 1 of the *Ramos* decision—
> holding that the Sixth Amendment only requires unanim-
> ity for a guilty verdict. This argument seems to suggest
> that the Court should uphold a systemically racist law so
> long as it is only used to discriminate against jurors of color
> when they vote to convict. But it cannot be used to discrim-
> inate against jurors of color whose votes are acquittal."

The trial court thus suggested that nonunanimous acquit-
tals based on Oregon law could silence jurors of color who
vote to find a defendant guilty, which would be "as odious
to victim's rights" as nonunanimous guilty verdicts that
"silence jurors of color who vote to acquit." The court illus-
trated its point with an example of a case in which one or
two white jurors might acquit a defendant when Black jurors
had voted to convict:

> "Given current racially charged events, one could easily
> imagine a situation where a white police officer is brought
> to trial for unjustly shooting and killing an unarmed black
> person, and the jury being made up of ten white people and
> two blacks. *** This illustrates the ultimate danger in
> partially upholding such systemic racism."

      But the Court in *Ramos* rejected Oregon's practice
of accepting nonunanimous guilty verdicts, not because
Oregon had adopted the law for an improper reason, or
because of the Court's concerns about racism, but because
the text of the Sixth Amendment codified the longstanding
legal requirement that "[a] jury must reach a unanimous
verdict in order to convict." *Ramos*, 590 US at ___, 140 S Ct
at 1395. The trial court went astray by treating one of the
Supreme Court's criticisms of *Apodaca* as though it were
a ground for the Court's constitutional holding concerning
the Sixth Amendment. As noted earlier, the Court faulted

the *Apodaca* plurality's functionalist reasoning as deficient even taken on its own terms. But the Court did not hold that the acceptance of nonunanimous guilty verdicts was impermissible *because* of the history of those provisions; instead, while rejecting the *Apodaca* plurality's functionalist approach, the Court expressly stated that the reasons for the practice were irrelevant to whether it violated the Sixth Amendment. 590 US at ___ n 44, 140 S Ct at 1401 n 44 (even if "benign reasons" motivated the practice, it "would still violate the Sixth Amendment").[3] The Court's criticisms of *Apodaca*, and of nonunanimous jury provisions in Louisiana and Oregon, do not have a constitutional stature, and they do not point to a conclusion that Oregon's nonunanimous acquittal provisions cannot constitutionally be applied.

The trial court also found support for its position in the concurrences of Justices Kavanaugh and Sotomayor. The court stated that Justice Kavanaugh's concurrence "further explored the impact a non-unanimous jury practice can have on not just cases involving black defendants, but also in cases involving black victims, and black jurors." Though Justice Kavanaugh touched on that subject, he did not contend that those public policy considerations made the use of nonunanimous juries unconstitutional.

Specifically, Justice Kavanaugh explained that, in his view, one of the factors that should be considered when deciding whether to overturn precedent is whether "the prior decision caused significant negative jurisprudential or real-world consequences[.]" *Ramos*, 590 US at ___, 140 S Ct at 1415 (Kavanaugh, J., concurring). Justice Kavanaugh explained that, "[i]n light of the racist origins of the non-unanimous jury, it is no surprise that non-unanimous juries can make a difference in practice, especially in cases involving black defendants, victims, or jurors." *Id.* at ___, 140 S Ct at 1417. He concluded that "the Jim Crow origins and

---

[3] That reasoning is consistent with the Supreme Court's prior holding in *Holland v. Illinois*, 493 US 474, 487, 110 S Ct 803, 107 L Ed 2d 905 (1990), that the *Sixth Amendment* does not prohibit a prosecutor from using a peremptory challenge to strike a juror based on race. While other constitutional provisions, including the Equal Protection Clause of the Fourteenth Amendment, forbid such conduct, *Holland* makes clear that a racially discriminatory purpose does not suffice to establish a Sixth Amendment violation.

racially discriminatory effects (and the perception thereof) of non-unanimous juries in Louisiana and Oregon should matter and should count heavily in favor of overruling" *Apodaca*. *Id.* at ___, 140 S Ct at 1418. But that reasoning pertained only to whether *Apodaca* should be overruled, not the preliminary issue of whether nonunanimous convictions violated the Sixth Amendment. On that issue, Justice Kavanaugh joined the majority opinion. For those reasons, Justice Kavanaugh's concurrence does not support a conclusion that acceptance of a nonunanimous acquittal violates the Sixth Amendment.

Justice Sotomayor's concurrence also discussed the history of the nonunanimous jury laws in Louisiana and Oregon, and that concurrence likewise fails to support a conclusion that *Ramos* invalidated nonunanimous acquittals in Oregon. Justice Sotomayor responded to a suggestion by the dissent that the early history of the adoption of nonunanimous verdicts in Louisiana and Oregon had become irrelevant. *See Ramos*, 590 US at ___, 140 S Ct at 1426 (Alito, J., dissenting) ("[W]hatever the reasons why Louisiana and Oregon originally adopted their rules many years ago, both States readopted their rules under different circumstances in later years."). In her concurrence, Justice Sotomayor argued that the "legacy of racism that generated Louisiana's and Oregon's laws" was still worth the Court's attention "because the States' legislatures never truly grappled with the laws' sordid history in reenacting them." *Id.* at ___, 140 S Ct at 1410 (Sotomayor, J., concurring). Justice Sotomayor concluded her concurrence with the following statement:

> "Today, Louisiana's and Oregon's laws are fully—and rightly—relegated to the dustbin of history. And so, too, is *Apodaca*. While overruling precedent must be rare, this Court should not shy away from correcting its errors where the right to avoid imprisonment pursuant to unconstitutional procedures hangs in the balance."

*Id.*

The trial court read that statement, and particularly the word "fully," as endorsing the conclusion that the provisions of Oregon law permitting nonunanimous *acquittals*

had been entirely invalidated by the decision in *Ramos*. As the trial court put it, "if a law has been fully relegated to the dustbin, how do I dust off part of it" and "make it work?" But we think that the trial court read too much into imprecise language. Justice Sotomayor, like Justice Kavanaugh, was explaining why it was appropriate to overrule *Apodaca*. Neither concurrence supplied a separate, or broader, basis for holding Oregon's use of nonunanimous juries unconstitutional, and neither said anything about nonunanimous acquittals.[4]

In conclusion, *Ramos* does not imply that the Sixth Amendment prohibits acquittals based on nonunanimous verdicts or that any other constitutional provision bars Oregon courts from accepting such acquittals. The Supreme Court in *Ramos*, and the concurring justices, alluded to broader critiques of Oregon's laws in explaining why *stare decisis* should not apply, yet the Court was careful to keep its constitutional reasoning distinct from its more pragmatic evaluation of whether *Apodaca* should be overruled.

The trial court erred in its determination that, in light of *Ramos*, the provisions of Oregon law permitting nonunanimous acquittals could not be applied. Thus, the trial court's decision to give a jury instruction that, contrary to Oregon law, requires unanimity for acquittals was error.

Peremptory writ of mandamus to issue.

---

[4] The trial court appears to have concluded that nonunanimous acquittals would violate the Sixth Amendment, but even if the court had understood Justice Sotomayor's concurrence as endorsing a separate Equal Protection Clause challenge to Oregon's nonunanimous verdict laws, such as one that might be brought to vindicate the "victim's rights" that the court mentioned, that understanding would have been incorrect. Justice Sotomayor's brief discussion of the history of those laws began with an acknowledgment that an Equal Protection Clause issue was not before the Court. *Ramos*, 590 US at ___, 140 S Ct at 1410 (Sotomayor, J., concurring). And, like the majority opinion, Justice Sotomayor's concurrence did not contain any analysis of whether Oregon's laws impinge on any person's Equal Protection Clause rights.