Submitted December 30, 2021, affirmed February 16, 2022

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

DALE WILLIAM MARTINEAU,
*Defendant-Appellant.*

Washington County Circuit Court
16CR60377; A174133

505 P3d 1094

Defendant appeals a judgment of conviction—based on unanimous jury verdicts—for several offenses. Before trial, defendant proffered a jury instruction that "all twelve jurors must agree on a verdict of guilty to return a guilty verdict," and "ten or more jurors must agree on a verdict of not guilty to return a not guilty verdict." The trial court rejected that instruction, concluding that the Sixth Amendment required unanimous verdicts for either conviction or acquittal, and instructed the jury accordingly. On appeal, defendant argues that the trial court erred in failing to instruct the jury that it could render nonunanimous not-guilty verdicts. *Held*: Given the holding in *State v. Ross*, 367 Or 560, 481 P3d 1286 (2021), the trial court in the present case erred in rejecting defendant's proffered instruction and giving the instruction that it did; however, because the instructional error in this case had little likelihood of affecting the jury's verdicts of guilt, the error was harmless.

Affirmed.

Andrew Erwin, Judge.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Daniel C. Bennett, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Doug M. Petrina, Assistant Attorney General, filed the brief for respondent.

Before Tookey, Presiding Judge, and Aoyagi, Judge, and Armstrong, Senior Judge.

TOOKEY, P. J.

Affirmed.

**TOOKEY, P. J.**

Defendant appeals a judgment of conviction—based on unanimous jury verdicts—for two counts of second-degree robbery, ORS 164.405, two counts of menacing, ORS 163.190, one count of second-degree theft, ORS 164.045, and one count of unlawful use of a vehicle, ORS 164.135. His trial occurred after the decision in *Ramos v. Louisiana*, 590 US ___, 140 S Ct 1390, 206 L Ed 2d 583 (2020) (under the Sixth Amendment to the United States Constitution, guilty verdicts for serious offenses must be unanimous to allow a conviction). *Ramos* overruled *Apodaca v. Oregon*, 406 US 404, 92 S Ct 1628, 32 L Ed 2d 184 (1972), which had upheld Oregon's nonunanimous jury provisions. *See* Or Const, Art I, § 11 ("[T]en members of the jury may render a verdict of guilty or not guilty, save and except a verdict of guilty of first-degree murder, which shall be found only by a unanimous verdict."). Relying on the Sixth Amendment to the United States Constitution, and Article I, section 11, of the Oregon Constitution, defendant proffered a jury instruction that "on each count, all twelve jurors must agree on a verdict of guilty to return a guilty verdict. Ten or more jurors must agree on a verdict of not guilty to return a not guilty verdict." The trial court rejected that instruction, concluding that the Sixth Amendment required unanimous verdicts for either conviction *or acquittal*, and instructed the jury accordingly.

On appeal, defendant argues that the trial court erred in failing to instruct the jury that it could render nonunanimous not-guilty verdicts. The state concedes that the court's instruction was erroneous and that defendant's proffered instruction was correct, but argues that the error was harmless in light of the unanimous guilty verdicts. As explained below, we agree with the state.

Regarding whether the failure to instruct the jury that it could render nonunanimous not-guilty verdicts was error, in *State v. Ross*, 367 Or 560, 481 P3d 1286 (2021), the Oregon Supreme Court issued a peremptory writ of mandamus after the trial court made a pretrial ruling that *Ramos* required jury unanimity for both conviction and acquittal. The court concluded that *Ramos* stood only for the proposition

that the Sixth Amendment required that a jury must reach a unanimous verdict to convict, not to acquit. *Id.* at 567 (citing *Ramos*, 590 US at ___, 140 S Ct at 1395). The court therefore concluded that "the trial court erred in its determination that, in light of *Ramos,* the provisions of Oregon law permitting nonunanimous acquittals could not be applied." *Ross*, 367 Or at 573.[1] Given the holding in *Ross*, the trial court in the present case erred in rejecting defendant's proffered instruction and giving the instruction that it did.

But a question of first impression remains whether that error entitles defendant to reversal of his convictions based on unanimous guilty verdicts. The error here concerned failure to apply the portion of Article I, section 11, of the Oregon Constitution that survived *Ramos*. As such, this court must affirm if there is little likelihood that the error affected the verdict. *State v. Davis*, 336 Or 19, 28, 32, 77 P3d 1111 (2003). Although defendant contends that he should prevail under the standard set forth in *Davis*, he also contends that a harmless-error analysis should not be undertaken because this is, in effect, a structural error, citing *State v. Estabrook*, 162 Or 476, 91 P2d 838 (1939), for the proposition that Oregon constitutional analysis should embody a structural-error type of standard.

We reject defendant's "structural error" argument without extended discussion. In *Ryan v. Palmateer*, 338 Or

---

[1] In reaching that conclusion, the court in *Ross* acknowledged the trial court's rationale for its decision. In particular, the trial court had noted that the Court in *Ramos* had explicitly acknowledged the racist origins of provisions such as Article I, section 11, of the Oregon Constitution. The trial court reasoned that, although Article I, section 11, was intended to nullify the votes of minority jurors who voted to acquit minority defendants, it would be equally as racist where, for example, a white person was tried for a crime against a black person, and black jurors' votes to convict were effectively nullified when one or two white jurors voted for acquittal. *Id.* at 570. The Oregon Supreme Court explained, however, that although the Court in *Ramos* recognized the racist origins of nonunanimous jury provisions, it rejected the "practice of accepting nonunanimous guilty verdicts, not because Oregon had adopted the law for an improper reason, or because of the Court's concerns about racism, but because the text of the Sixth Amendment codified the longstanding legal requirement that '[a] jury must reach a unanimous verdict in order to convict.'" *Id.* (quoting *Ramos*, 590 US at ___, 140 S Ct at 1395). We note this because the trial court in the present case, like the trial court in *Ross*, reasoned that allowing nonunanimous acquittals permitted one aspect of the ongoing systemic racism embodied in Article I, section 11, to continue.

278, 295-97, 108 P3d 1127, *cert den*, 546 US 874 (2005), a case involving Article I, section 11, the court undertook an extensive discussion as to why "structural error" is not a useful analytical tool in assessing Oregon constitutional issues, concluding that, in light of Article VII (Amended), section 3, of the Oregon Constitution, the court "must affirm a judgment, despite any error committed at trial, if, after considering all the matters submitted, the court is of the opinion that the judgment 'was such as should have been rendered in the case.'" *Id.* at 296 (quoting *Davis*, 336 Or at 28); *see also id.* at 296-97 ("Under Article VII (Amended), section 3, the test for affirmance despite error consists of a single inquiry: 'Is there little likelihood that the particular error affected the verdict?'" (Quoting *Davis*, 366 Or at 32.)); *State v. Barone*, 329 Or 210, 226, 986 P2d 5 (1999), *cert den*, 528 US 1086 (2002) ("This court has not adopted the doctrine of 'structural' or 'systemic' error in analyzing questions of Oregon law.").

We thus turn to the question whether there is little likelihood that the instructional error in this case affected the verdict. As an initial matter, we observe that the Oregon Supreme Court indirectly addressed this very issue in *Ross*. As noted, *Ross* was a mandamus case, and as such, the court first addressed whether mandamus was an appropriate remedy, because that remedy is not available "where there is a plain, speedy and adequate remedy in the ordinary course of the law." 367 Or at 564 (quoting ORS 34.110). The court stated:

> "A jury instruction that misstates the requirements for acquittal presents a potential for harm that may not be remediable on appeal. *If a jury instructed in that manner convicts the defendant, the defendant can appeal, but the error ultimately may be found harmless, which would preclude relief.*"

*Ross*, 367 Or at 564 (emphasis added). Although not dispositive, those statements indicate not only that the court contemplated that a harmless-error standard—rather than a structural-error standard—would apply to this type of error, but also recognized that demonstrating that an error was harmful would be problematic for a defendant who was convicted based on unanimous verdicts.

We do not find it surprising that the court would say that, particularly in light of its then-recent analysis in *State v. Flores Ramos*, 367 Or 292, 478 P3d 515 (2020), in which it had concluded not only that a trial court's erroneous instruction that a jury could return nonunanimous verdicts did not constitute structural error, but also that the error was harmless "beyond a reasonable doubt" under the federal constitutional standard for assessing harmlessness. *Id.* at 305, 320-33. While the court in *Flores Ramos* gave numerous reasons for its conclusion with respect to harmlessness, one seems particularly apt here: "The fact that the verdict *is* unanimous provides some assurance, in and of itself, that no juror was ignored and that all jurors' reasonable doubts as to those counts were resolved." *Id.* at 328 (emphasis in original). That observation applies with equal force in the present context—where all 12 jurors voted to convict, their votes indicate that they all were convinced beyond a reasonable doubt that defendant committed the offenses. An instruction that only 10 or 11 votes were required to return a verdict of acquittal would only have made a difference if 10 out of the 12 who voted to convict were not, in fact, convinced that the state had proven its case beyond a reasonable doubt. There would seem to be little likelihood of that occurring, as such a conclusion would be based on an assumption that the vast majority of the jurors failed to follow the court's instructions regarding reasonable doubt. And, as is often noted, we assume that jurors follow the court's instructions, unless there is an "overwhelming probability that they would be unable to do so." *State v. Smith*, 310 Or 1, 26, 791 P2d 836 (1990). That is not the case here.

Defendant's remaining argument on appeal that the error was not harmless under the standard set forth in *Davis* is based on his understanding of *State v. Zolotoff*, 354 Or 711, 720, 320 P3d 561 (2014), which he asserts stands for the proposition that an incorrect jury instruction is not harmless if a correct instruction "would have provided the jury with a legal distinction to apply during its deliberations." He does not acknowledge, however, that the court in *Flores Ramos* considered, and rejected, the same argument that *Zolotoff* required a conclusion that the incorrect instruction concerning nonunanimous verdicts was not

harmless. An extended discussion of defendant's argument is not needed here, in light of the court's thorough assessment and rejection of that argument in *Flores Ramos. See Flores Ramos*, 367 Or at 323 (*Zolotoff* did not "embrace a categorical rule that the omission of any instruction that might help the jury understand a legal distinction cannot be harmless."); *id.* ("[I]nsofar as the jury did return unanimous guilty verdicts \*\*\*, defendant does not persuasively explain how instructing the jury on the necessity of a unanimous verdict would have affected the unanimous verdicts."). Similarly here, defendant cannot persuasively explain how instructing the jury that it could return nonunanimous verdicts of not guilty would have affected its unanimous guilty verdicts.

Because we conclude that the instructional error in this case had little likelihood of affecting the jury's verdicts of guilt, we conclude that the error was harmless. *Davis*, 336 Or at 28.

Affirmed.