***This is a nonprecedential memorandum opinion
pursuant to ORAP 10.30 and may not be cited
except as provided in ORAP 10.30(1).***

Submitted June 24, affirmed September 28, 2022, petition for review denied
February 9, 2023 (370 Or 740)

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

ERIC LEE KIRK,
*Defendant-Appellant.*

Klamath County Circuit Court
19CR71527, 20CR00075;
A174341 (Control), A174342

Marci Warner Adkisson, Judge.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and David Sherbo-Huggins, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Susan G. Howe, Assistant Attorney General, filed the brief for respondent.

Before James, Presiding Judge, and Aoyagi, Judge, and Joyce, Judge.

JOYCE, J.

Affirmed.

**JOYCE, J.**

In these consolidated cases, defendant appeals from a judgment of conviction for first-degree burglary, unlawful use of a weapon, and tampering with a witness and bribing a witness. On appeal, defendant contends that the court erred by (1) denying his motion to sever; (2) "unduly burdening" his right to represent himself; and (3) instructing the jury that it needed to reach a unanimous verdict if it found defendant not guilty. We affirm.

## MOTION TO SEVER

In November 2019, defendant was indicted for domestic-violence crimes stemming from an assault and burglary (the burglary case). While defendant was in custody awaiting trial, he wrote a series of letters to the victim and asked the victim to get him "out of this mess" by suggesting that she lie about the events, inform the court that she did not want to press charges against defendant, or not show up for trial. In one letter, he also promised to repair the door and window that he had damaged during the burglary if the victim got the criminal charges against him dismissed. Those letters led to a second indictment against defendant for tampering with a witness and bribing a witness (the tampering case).

The trial court granted the state's motion to consolidate the two cases. Defendant later moved to sever, arguing that he would be substantially prejudiced by the joinder because (1) the evidence was not mutually admissible in each case; and (2) the evidence was not sufficiently simple and distinct to mitigate the dangers otherwise created by joinder. Specifically, defendant contended that in the tampering case, the state intended to introduce another series of letters that he wrote to the victim in 2017 to prove that he was the same person who wrote the letters in 2019, but the 2017 letters had no relevance to the burglary case.[1] Defendant argued that those 2017 letters—which contained references to defendant's anger-management problem, previous incarceration status, and his prior efforts to obstruct

---

[1] The 2019 letters were unsigned whereas the 2017 letters had defendant's signature.

justice—would "confus[e] the jury and hav[e] the risk that the jury makes a decision on each individual count here based on evidence that is not relevant." Defendant further argued that he would be substantially prejudiced because he may want to testify in one case but not the other.

The trial court denied defendant's motion on the grounds that the two cases are "straightforward and simple" and "[m]uch of the evidence would be mutually admissible."[2]

On appeal, defendant assigns error to the trial court's denial of his motion to sever. Under ORS 132.560(3), severance is appropriate if defendant is "substantially prejudiced" by the joinder of offenses. We review the trial court's determination that defendant failed to demonstrate "substantial prejudice" for legal error. *State v. Crummett*, 274 Or App 618, 621, 361 P3d 644 (2015), *rev den*, 359 Or 525 (2016).

Defendant renews the contentions that he raised below, arguing that he was substantially prejudiced because evidence from the tampering case, specifically, the letters defendant wrote to the victim in 2017, would not be cross-admissible in the burglary case had the cases been tried separately.[3] However, even assuming that were true, defendant nonetheless failed to demonstrate substantial prejudice. Where evidence in each case is "sufficiently simple and distinct to mitigate the dangers created by joinder[,]" defendant is not substantially prejudiced by a denial of a motion to sever. *State v. Dimmick*, 248 Or App 167, 178, 273 P3d 212 (2012). Here, the charges against defendant involved separate incidents on different days and were distinctly

---

[2] The trial court later resolved defendant's motion to suppress his 2017 letters off the record. The parties conferred with the court *in camera* about the 2017 letters, at which time the trial court ordered the prosecution to redact specific statements referencing defendant's incarceration.

[3] Defendant also argues that he was substantially prejudiced because the joint trial deprived him of the protections in the Oregon Evidence Code against the admission of the "bad acts" evidence. In defendant's view, the content of the 2017 letters—which demonstrated that he was an angry, manipulative person who had treated the victim badly in the past and lacked respect for women and police officers—invited the jury to view defendant as a bad person and more likely to engage in assaultive conduct. As the state observes, defendant's argument is foreclosed by *State v. Miller*, 327 Or 622, 632, 969 P2d 1006 (1998) (When charges against a defendant are "joined lawfully for trial," the evidence of the defendant's criminal conduct is "relevant to prove that defendant had perpetrated the particular offenses to which that evidence pertain[s].").

different in nature. Thus, the evidence in the two cases was "not so complex that the jury could not sort through the testimony and determine what happened in each case." *State v. McMinn*, 145 Or App 104, 108, 929 P2d 1009 (1996); *see also Dimmick*, 248 Or App at 179 (permitting joint trial on drug charges that were based on four different incidents that occurred on four different days where the evidence in support of the charges was "sufficiently simple and distinct").

Defendant also suggests that "the trial court did nothing to mitigate the risk of prejudice by joinder. It did not instruct the jury to separate its consideration of the evidence in each case[.]" Defendant is correct that the risks present in joinder can be mitigated by jury instructions that, to use defendant's description, "separat[e] the evidence and limit[] the jury's consideration[.]" *See State v. Buyes*, 280 Or App 564, 571, 382 P3d 562 (2016) (observing that limiting instructions on considering evidence of each charge separately can suffice to mitigate any putative prejudice created by joinder); *State v. Tidwell*, 259 Or App 152, 155-56, 313 P3d 345 (2013), *rev den*, 355 Or 142 (2014) (rejecting the defendant's argument that two DUII charges should have been severed given the "probable effectiveness of limiting instructions to the jury").

But the relevant question before the court when it was deciding the motion to sever was whether defendant had demonstrated substantial prejudice. After the court concluded that he had not, and, accordingly, denied the motion to sever, defendant was free to request limiting jury instructions on that topic. He did not. Nor did defendant suggest that the trial court was obligated to *sua sponte* provide such instructions, which would require a separate assignment of error. *State v. Williams*, 272 Or App 770, 772-73, 358 P3d 299 (2015), *rev den*, 358 Or 611, *cert den*, 579 US 907 (2016) (rejecting the defendant's argument that he suffered substantial prejudice because the trial court did nothing to mitigate the prejudice, such as providing limiting jury instructions, because the defendant did not request such instructions).

Defendant further contends that he suffered substantial prejudice because defendant "may" have chosen to

testify in the burglary case and not the tampering case. As we have in similar cases, we reject that argument because of the availability of measures—such as limiting instructions and limiting cross-examination—that could mitigate the potential prejudice identified by defendant. *See State v. Gensler*, 266 Or App 1, 9, 337 P3d 890 (2014), *rev den*, 356 Or 690 (2015) (rejecting the defendant's argument that a joint trial would taint his ability to testify or remain silent given that "the potential prejudice identified by [the] defendant could be mitigated through jury instructions and by limiting the state's cross-examination of [the] defendant").

We thus conclude that the trial court did not err in denying defendant's motion to sever the cases.

## RIGHT TO SELF-REPRESENTATION

In defendant's second assignment of error, he argues that the trial court erred by "unduly burdening" his right to represent himself. Whether a trial court violated a defendant's right to self-representation is a question of law that we review for errors of law. *State v. Miller*, 254 Or App 514, 522-24, 295 P3d 158 (2013) (applying standard).

After opening statements, defendant expressed his frustrations with his counsel, and said "I almost wanted to fire him and represent myself." The trial court initially responded to defendant that he "may not" represent himself at this point and told defendant to talk to his counsel. Defendant stated that he has a right to represent himself and that he "would rather defend [him]self other than go put up with" his counsel. In response, the court stated that if defendant decided to represent himself, he would have to be "well versed in literally every page" of the Oregon Evidence Code. The court further explained that defendant would be expected to abide by the Evidence Code at trial. After defendant indicated that he would read the rules of evidence, the court again encouraged defendant to talk more with his lawyer about self-representation.

After a short recess, the court read to defendant a prepared list about the responsibilities and risks that defendant needed to be cognizant of to make a knowing, voluntary, and intelligent decision to waive counsel. In that exchange,

the court continued to encourage defendant to talk with his counsel about whether to persist with his request to represent himself. The court also reiterated the disadvantages defendant would have if he elected to proceed *pro se* and told him:

> "You must know how to make legal arguments to the Court and present opening and closing statements to the jury. You must know how to question witnesses and how to present evidence necessary for your defense.
>
> "You must understand the Rules of Evidence. *** You must know how and when to object to the use of improper evidence. ***
>
> "You will be responsible for presenting evidence and making arguments about sentencing issues ***.
>
> "You must know the consequences that may be imposed if you are found guilty and any possible sentences."

The court then stated that it would ask the jail to give defendant access to the law library in case he chose to represent himself at trial the next morning. Towards the end of the colloquy, the court told defendant that it "can find a voluntary and knowingly and intelligent piece of this," and ultimately, that it was defendant's decision how he wished to proceed. The court cautioned defendant, however, that representing himself at trial is "a very complicated thing to do." The court informed defendant that if he decided to waive counsel, the court would take up the matter the next morning. Defendant responded, "Okay." The following morning—before the court made any ruling on whether defendant could represent himself—defendant's counsel informed the court that defendant elected to proceed with counsel's representation.

On appeal, defendant argues that the court summarily denied defendant's request to self-representation by delaying the waiver inquiry to the next day. Alternatively, defendant argues that "by informing defendant of a laundry list of legal skills and knowledge that he was required to have or know," the trial court placed improper limitations on defendant's exercise of his right to represent himself. We disagree.

Here, as it was required to do, the trial court provided defendant with the information that defendant needed to make a knowing, voluntary, and intelligent decision to waive counsel. *State v. Meyrick*, 313 Or 125, 133, 831 P2d 666 (1992) (providing that "[a] colloquy on the record between the court and the defendant" that "in some fashion, explains the risks of self-representation is the preferred means of assuring that the defendant understand[s] the risks of self-representation"). After it conducted the waiver inquiry, the trial court expressly afforded defendant an opportunity to renew his request for self-representation the next morning if he desired to do so. The court suggested that defendant consult with his counsel and arranged to have defendant have access to the jail law library. Given the inherent risks and disadvantages of self-representation, asking defendant to consider his decision overnight and consult with counsel before his trial proceeded does not unduly burden his request.

Indeed, the following morning, before the court issued a ruling with respect to defendant's earlier request, defendant chose to proceed with counsel. Under those circumstances, the trial court did not improperly delay or deny defendant's request for self-representation. *State v. Groff*, 306 Or App 40, 46, 472 P3d 812, *rev den*, 367 Or 387 (2020) (concluding that despite the defendant's earlier unequivocal request for self-representation, the trial court did not deny his right to self-representation where the defendant "chose to proceed with counsel before the [trial] court ruled with respect to defendant's request [to proceed *pro se*]").

We also disagree that the trial court placed improper limitations on defendant's exercise of his right to represent himself. A trial court has an obligation to warn a defendant of "the dangers and disadvantages of self-representation," in ensuring that an assertion of the right to self-representation is made knowingly. *State v. Hightower*, 361 Or 412, 417, 393 P3d 224 (2017) (internal quotation marks omitted). The "knowing" component refers to a defendant's "knowledge and understanding of the right to counsel." *Meyrick*, 313 Or at 132-33 n 8. A defendant is said to understand their right to counsel if, considering "the totality of the circumstances,"

the record reflects that the defendant "substantially appreci-
ates the material risks of self-representation in [their] case."
*State v. Jackson*, 172 Or App 414, 423, 19 P3d 925 (2001).
Indeed, a defendant's waiver is likely to be unconstitutional
if the court's warnings of the pitfalls of self-representation
were "cursory in nature and lacking in detail." *State v.
Lasarte*, 203 Or App 222, 229, 125 P3d 33 (2005); *see also
Meyrick*, 313 Or at 133 ("The more relevant information that
a trial court provides to a defendant * * * about the dangers
and disadvantages of self-representation, the more likely it
will be that a defendant's decision to waive counsel is an
intentional relinquishment or abandonment of a known
right or privilege[.]"); *Groff*, 306 Or App at 48 (concluding
that the trial court did not improperly "cajole[] [the] defen-
dant to accept counsel despite his requests to the contrary"
when the trial court advised him of the benefits of having
counsel).

Here, the colloquy demonstrated the trial court's
effort to ensure that defendant had sufficient understand-
ing of the risks and disadvantages of self-representation.
To be sure, the trial court told defendant that to represent
himself, he had to be "well versed in literally every page"
of the Oregon Evidence Rules and must know how to make
legal arguments, present opening and closing statements,
question a witness, and object to the use of improper evi-
dence. As defendant observes, a defendant is not in fact
required to be "well versed in literally every page" of the
Oregon Evidence Rules and the court's statement was thus
incorrect. However, over the span of 40 pages of transcript,
the trial court engaged with defendant in a considerable
(and legally correct) discussion about the roles of the eviden-
tiary, procedural, and other rules in the court proceedings.
Viewing the record as a whole, the purpose of the trial court's
conversation with defendant was to adequately explain to
him that despite his lack of legal training, he would none-
theless be expected to abide by the rules of evidence and
procedures if he elected to represent himself at trial and
that his unfamiliarity with those rules could keep him from
effectively presenting his case. *See State v. Palmer*, 35 Or
App 125, 128, 580 P2d 592 (1978) ("A defendant appearing
*pro se* must inform [themself] of and comply with court rules

as any other litigant."); OEC 101 (general applicability of the Oregon Evidence Code to criminal actions and proceedings).

Accordingly, under the totality of circumstances, we conclude that the trial court properly left the final decision of whether to represent himself up to defendant, and thus did not err by "unduly burdening" defendant's right to waive counsel.

UNANIMOUS JURY INSTRUCTION FOR
NONGUILTY VERDICT

In his third assignment of error, defendant argues that the court erred in instructing the jury that it needed to be unanimous for not-guilty verdicts as well as guilty verdicts. Although defendant is correct that that is error, *see State v. Ross*, 367 Or 560, 561, 481 P3d 1286 (2021), the instructional error is harmless in light of the jury's unanimous guilty verdicts. *See State v. Martineau*, 317 Or App 590, 594-95, 505 P3d 1094 (2022) (so holding).

Affirmed.