Argued and submitted September 27, 2022, affirmed March 8, 2023

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

STEVEN JOSEPH DE MAURO,
*Defendant-Appellant.*

Lincoln County Circuit Court
19CR77808; A174784

526 P3d 794

Defendant was convicted of second-degree murder for killing his friend T. For several years, T had been staying on and off at the apartment shared by defendant and defendant's girlfriend. One night, when everyone was intoxicated, defendant became upset with T and told him that it was time for him to leave. T ignored defendant and went onto the deck. Defendant retrieved a gun and fired two or three shots, the last of which killed T. At trial, defendant raised the defenses of self-defense and defense of premises. As relevant to defense of premises, the court instructed the jury on criminal trespass, including the role of cotenancy. Separately, the court instructed the jury that it must unanimously agree on a not-guilty verdict. On appeal, defendant challenges, first, the cotenancy portion of the criminal trespass instruction and, second, the unanimity instruction. *Held*: Even if the cotenancy portion of the criminal trespass instruction misstated the law, the error was harmless under the circumstances. The jury found that defendant was not justified in using deadly force to defend himself against T, such that there is little likelihood that the same jury would have found that defendant was justified in using deadly force to defend the premises. As for the unanimity instruction, the instruction was erroneous, but the error was harmless because the jury returned a unanimous guilty verdict.

Affirmed.

Sheryl Bachart, Judge.

Kali Montague, Deputy Public Defender, argued the cause for appellant. Also on the briefs was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Joanna Hershey, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Aoyagi, Presiding Judge, and Joyce, Judge, and Jacquot, Judge.*

AOYAGI, P. J.

Affirmed.

_____
* Jacquot, J., *vice* James, J. pro tempore.

**AOYAGI, P. J.**

Defendant was convicted of second-degree murder, ORS 163.115, after shooting and killing his friend T. At trial, defendant raised the defenses of self-defense and defense of premises, so the trial court instructed the jury on those defenses. On appeal, defendant raises two assignments of error. First, he challenges the court's jury instruction on criminal trespass, specifically the portion regarding cotenancy. Second, he challenges the jury instruction on unanimity. For the following reasons, we affirm.

With respect to the unanimity instruction, the trial court instructed the jury that unanimity was required to acquit. That instruction was legally erroneous, as the state concedes. *State v. Ross*, 367 Or 560, 561, 481 P3d 1286 (2021). However, the error was harmless because the jury returned unanimous verdicts. *State v. Martineau*, 317 Or App 590, 594-95, 505 P3d 1094, *rev den*, 370 Or 197 (2022) (holding same, with respect to same jury instruction). We therefore reject defendant's second assignment of error.

Turning to the first assignment of error, defendant lived in an apartment with his girlfriend Paterson. T was a friend who stayed there from time to time. He had a key to the apartment and a room that he stayed in, and he used the address for his DMV records. Defendant described the situation to police as being that T "pretend[ed]" to live in the apartment but was not on the lease. On November 27, 2019, T was staying at the apartment. All three of them went out drinking, and, when they returned, Paterson went to get ready for bed. Defendant decided that he wanted T out of the apartment.

Defendant gave somewhat differing accounts to the police and at trial, and there were also differences between his accounts and Paterson's account. However, in short, defendant wanted T to leave because he was tired of being around T, who was a "mooch" and a "pain in the ass person." Defendant told T that it was time for him to leave and that he wanted him to leave. T did not respond, instead walking onto the apartment's deck. Defendant retrieved a .22 revolver from his bedroom. He again told T to leave. T was standing on the deck with his back to defendant and did

not respond. Defendant admitted at trial that he could have locked the balcony door and called for help. Instead, he fired a "warning shot," which he thought clipped T in the shoulder but later learned did not actually hit him. (At trial, defendant testified that he fired two warning shots, a minute or less apart, and that it was the second one that he thought accidentally "hit" or "tapped" T's shoulder.) At that point, T "came at" defendant, and defendant shot him "point blank" in the chest. T died of a single gunshot wound fired from one to two inches away. Toxicology reports showed that, when he died, T had a blood alcohol level of 0.221 as well as methamphetamine and amphetamine in his system; three to four hours after the shooting, defendant's blood-alcohol level was 0.19.

Defendant was charged with second-degree murder with a firearm. At trial, defendant did not contest that he caused T's death, but he argued that he acted lawfully in self-defense and in defense of premises. During his testimony, defendant described the end of the encounter as T coming "quickly" toward him, slowing down and getting into a "wrestling stance," and then continuing toward him with arms up, at which point defendant shot him. Defendant was pointing the gun at T because, in defendant's words, he "could see it coming." He hoped that T would just leave, but T came at him instead. Defendant testified that he was still recuperating from carotid artery surgery when the incident occurred and that, when T came at him, he was afraid that T might grab his neck, or break his back against the deck, or choke him to death, or take his gun. Defendant and T had never had a physical altercation, but T had talked about being in bar fights in the past. Defendant testified that he did not mention being afraid to the police officers because he is a boat captain and is not one to talk about being afraid and that he did not tell Paterson that he had been afraid because she was too emotional about the incident.

ORS 161.225 governs the use of physical force in defending one's home. As relevant here, "[a] person in lawful possession or control of premises is justified in using physical force upon another person when and to the extent that the person reasonably believes it necessary to prevent or terminate what the person reasonably believes to be the

commission or attempted commission of a criminal trespass by the other person in or upon the premises." ORS 161.225(1). A person is justified in using *deadly* physical force in defense of premises only (1) in defense of a person as provided in ORS 161.219,[1] or (2) "[w]hen the person reasonably believes it necessary to prevent the commission of arson or a felony by force and violence by the trespasser." ORS 161.225(2).

As relevant to the use of force generally, the court instructed the jury that "criminal trespass" occurs when a person "remains unlawfully in a dwelling." Because T was a guest of both defendant and Paterson, the state asked the court to also address cotenancy as relevant to criminal trespass. Over defendant's objection, the court added the instruction: "A cotenant cannot exclude someone if another cotenant has allowed that person to be there. A cotenant with actual authority can permit a third party's entry or stay over the objection of a cotenant with equal authority." As for the use of deadly force, the court instructed the jury:

> "Even though a person may use a reasonable degree of physical force in defense of premises, there are certain limitations on this legal privilege. The defendant is not justified in using deadly force on another person unless (a) he reasonably believes that the other person is committing or attempting to commit a felony involving the use or threatened imminent use of physical force against a person; (b) the other person is committing or attempting to commit a burglary in a dwelling; (c) the other person is using or about to use deadly physical force against a person; or (d) it is necessary to prevent an arson or another felony by force and violence by the trespasser."

Defendant contends that the court erred in giving the cotenancy instruction, because it misstated the law and was otherwise unwarranted. "A trial court commits reversible error when it incorrectly instructs the jury on a material element of a claim or defense and that instructional error allows the jury to reach a legally erroneous outcome." *State*

---

[1] ORS 161.219 limits a person's use of deadly physical force in defense of a person to circumstances in which the person "reasonably believes" that the other person is committing or attempting to commit a felony involving the use or threatened imminent use of physical force against a person, committing or attempting to commit a burglary in a dwelling, or using or about to use unlawful deadly physical force against a person.

*v. Phillips*, 313 Or App 1, 2, 493 P3d 548, *rev den*, 358 Or 788 (2021). The state disagrees that the cotenancy instruction misstated the law. We need not resolve that issue because we conclude that even if it did, the error was harmless. That is, there is little likelihood that it affected the verdict. *State v. Davis*, 336 Or 19, 32, 77, P3d 1111 (2003).

We look at the jury instructions as a whole in assessing harmlessness. *State v. Lopez-Minjarez*, 350 Or 576, 584, 260 P3d 439 (2011). Here, defendant posits that, absent the erroneous cotenancy instruction, the jury might have found that defendant reasonably believed that T was criminally trespassing when he failed to leave. Even if that is true, however, there is little likelihood that it would have affected the verdict. For the defense-of-premises defense to apply, the jury would have had to find not only that defendant reasonably believed that T was criminally trespassing in the apartment—when T failed to leave after defendant told him to leave—but also that defendant reasonably believed that it was necessary to shoot T in the chest to terminate the criminal trespass and to prevent T from committing a felony by force and violence. That is very unlikely given that the jury rejected defendant's self-defense defense.

On self-defense, the jury was instructed that "[a] person is justified in using physical force on another person to defend himself from what he reasonably believes to be the use or imminent use of unlawful physical force," but that "a person may only use the degree of force which he reasonably believes to be necessary," and that the use of deadly physical force is not justified unless the defendant reasonably believed that the other person was committing or attempting to commit a felony involving the use or threatened imminent use of physical force against a person, committing or attempting to commit a burglary in a dwelling, or using or about to use unlawful deadly physical force against defendant or another person.

Given the similarity of the two defenses and the critical points at which they overlap, there is little likelihood—indeed, it is nearly inconceivable—that the same jury considering the same set of circumstances would find that defendant was not justified in using deadly force to defend

*himself* when T moved toward him, but that he was justified in using deadly force to defend *his premises* when T moved toward him.[2] We therefore conclude that, even if the cotenancy instruction misstated the law, that error was harmless and does not provide a basis for reversal.

Finally, in addition to arguing that it misstated the law, defendant makes three other arguments on appeal regarding the cotenancy instruction, each of which he describes as "an independent basis for reversal": that the instruction addressed an irrelevant issue (whether T was *actually* criminally trespassing); that it was not supported by evidence (because there was no evidence that Paterson told T to stay *after* defendant told him to leave); and that it improperly commented on the evidence (essentially telling the jury that it was unreasonable for defendant to believe that T was criminally trespassing). We do not address the latter two arguments, because we agree with the state that they were not preserved in the trial court. As for the first argument, we reject defendant's contention that the cotenancy instruction addressed an irrelevant issue. It was appropriate to instruct the jury on what criminal trespass is, as relevant to the reasonableness of defendant's belief that T was trespassing. *State v. Delucia*, 40 Or App 711, 714, 596 P2d 1985 (1979). We see no reason that the court could not address the effect of cotenancy as part of explaining what criminal trespass is. Also, the court specifically instructed the jury that, as to defense of premises, the issue was defendant's reasonable belief.

Affirmed.

---

[2] Defendant argues that the cotenancy instruction "likely impacted the jury's deliberation on defendant's self-defense claim." We disagree. The court instructed the jury to consider the criminal trespass and cotenancy instructions *only* as to the defense-of-premises defense. "Jurors are assumed to have followed their instructions, absent an overwhelming probability that they would be unable to do so." *State v. Hunt*, 297 Or App 597, 605, 442 P3d 232 (2019).